Barbara K. BURCH, Respondent v. Thomas E. ASHBURN, Appellant.

(368 S. E. (2d) 82)

Court of Appeals

*Robert H. Gwin, III* of *Thompson, Henry & Gwin*, Myrtle Beach, *for appellant.*

*Irby E. Walker, Jr.,* and *Terry W. Smith,* Conway, *for respondent.*

Heard Jan. 18, 1988.

Decided April 25, 1988.

BELL, Judge:

Barbara K. Burch brought this suit against Thomas E. Ashburn for payment of a promissory note. Ashburn denied liability on the note and counterclaimed for damages for breach of a related partnership agreement between the parties. The case was tried to a jury. At the close of the evidence, the circuit court directed a verdict for Burch on the note and entered judgment thereon for $5,589.17 plus interest. The court also directed a verdict for Burch on Ashburn's counterclaim. Ashburn appeals. We affirm the judgment on the note, but reverse the judgment on the counterclaim.

During the summer of 1984, Burch employed Ashburn as sales manager for Burch Pool Management, a commercial swimming pool maintenance service which she operated as a sole proprietorship. The business consisted of servicing swimming pools at resort hotels in the Myrtle Beach area and running poolside concession stands for the sale of suntan oils and other products at each location. During the 1984 season, Burch had contracts at nine locations.

Near the end of the 1984 season, Burch and Ashburn discussed becoming partners in the business. On October 16, 1984, Ashburn executed and delivered to Burch his promissory note for $6,500.00 in exchange for a one half interest in the business of Kay Burch d/b/a Burch Pool Management. The note is negotiable in form. It contains no reference to the Partnership Agreement. On its face it is an unconditional promise to pay $6,500.00 in four installments with the full balance due on July 30, 1985. Ashburn made the first payment at the time the Partnership Agreement was signed. The remaining payments were due on May 30th, June 30th, and July 30th, 1985. Ashburn failed to make these payments.

The same day the note was given, the parties executed a Partnership Agreement, agreeing to operate the business

together as a general partnership. The Agreement required Ashburn to assume the duties of managing the business; it obligated Burch to use her best efforts to procure contracts and increase sales and sales locations for the business. The Agreement recited that the initial capital contribution of both parties consisted of retail outlets (suntan huts), contracts, supplies, equipment, and goodwill of the business formerly known as Kay Burch d/b/a Burch Pool Management. The parties also executed a Bill of Sale transferring title to these assets from Kay Burch d/b/a Burch Pool Management to Burch Pool Management, a South Carolina general partnership.

The stated consideration for the Partnership Agreement is the mutual covenants, conditions, and promises contained therein and a further consideration of Five Dollars paid by each party to the other. The note is not mentioned as part of the consideration for the Agreement. A later paragraph of the Agreement, however, acknowledges "... that Ashburn is purchasing a one half interest in a business from Burch, for $6,500.00, said sum represented by a promissory note of even date herewith." The Agreement also provides that in the event of a default on the note, the partnership will terminate.

## I.

Ashburn contends he has a complete defense to the note, because Burch breached her duty to use her best efforts to procure maintenance contracts and retail locations for the business. He points to the uncontested fact that Burch procured only one contract for the 1985 season, whereas she obtained nine contracts for the 1984 season.

Ashburn premises his legal argument on the common law of contracts. Since the note is a negotiable instrument, we analyze the case under Article Three of the Uniform Commercial Code, Sections 36-3-101 through 36-3-805, Code of Laws of South Carolina, 1976.

As between the promisor and the named payee on a note, the terms of the note may be modified or affected by any other written agreement executed as part of the same transaction. See Code Section 36-3-119(1). However, the terms of a separate agreement will not be read

into a note so as to destroy its negotiability nor to limit the rights of a holder in due course who took without notice of any claims, defenses, or limitations arising from the separate agreement. *Id.*, subsecs. (1) and (2); *See Northwestern Bank v. Neal,* 271 S. C. 544, 248 S. E. (2d) 585 (1978). Likewise, a separate agreement may not be used to contradict the unambiguous terms of the note. *Northwestern Bank v. Neal, supra.* And the terms of a separate agreement which is not intended to affect the note at all may not be used to defeat enforcement according to its own tenor, even though the note and the agreement arise from the same transaction. *Id.*

In this case, the note and the Partnership Agreement were executed as part of the same transaction. Thus, they should be read together to ascertain the intent of the parties. On its face, the note is an unconditional promise to pay specified sums of money on the due dates. It makes no reference whatever to performance of the Partnership Agreement. The Agreement does acknowledge execution of the note, but it simply states that the note represents the purchase price Ashburn is paying to Burch for one half interest in "a business." Significantly, there is no statement that the note is consideration for the Partnership Agreement. The only provision that ties the note and the Agreement together states that the partnership will terminate if Ashburn does not pay the note. Thus, payment of the note is made a condition for continuing the partnership. In contrast, no term of the Agreement conditions payment of the note upon performance of any covenant or promise in the Agreement. Since the parties expressed no intention to make the obligation of the note dependent upon performance of the Agreement, we hold that the contemporaneous execution of the two writings does not affect the note, which is enforceable according to its tenor without regard to any breach of the Partnership Agreement.

## II.

Ashburn also raises the defense of failure of consideration to avoid his obligation on the note. Failure of consideration is a defense as against any person not having the rights of a holder in due course. Code Section

36-3-408. We need not decide whether Burch is a holder in due course (Code Section 36-3-302(2)), since the facts show Ashburn received full consideration for the note.

Ashburn gave the note in exchange for a one half undivided interest in the assets of Kay Burch d/b/a Burch Pool Management. He and Burch then jointly transferred these assets to the partnership as their initial capital contribution. Ashburn was a 50% partner under the terms of the Partnership Agreement. Whether the note represents a purchase of the assets of the original proprietorship, which were then transferred to the partnership, or a direct purchase of Ashburn's partnership interest,[1] it is clear he received what he bargained for, viz., a one half interest in the business. This interest was a property right. *See* Section 33-41-710, Code of Laws of South Carolina, 1976. On the facts of this case, it vested in Ashburn immediately upon execution of the documents on October 16, 1984. At that point, he had received full consideration for the note. Burch's subsequent breach of a covenant of the Partnership Agreement, if any, concerned personal and fiduciary obligations arising from the partnership contract. It was immaterial to the question of consideration for the note. Thus, Ashburn's assertion that there was a failure of consideration for the note is without merit.

### III.

Ashburn next argues that the note is unenforceable as a matter of law because documentary stamps were not affixed to it as required by statute. *See* Section 12-21-360, Code of Laws of South Carolina, 1976 (repealed eff. July 1, 1987). Under South Carolina law, a note is not void for want of a revenue stamp. *Robinson v. Robinson*, 20 S. C. 567 (1883). This defense is also without merit.

### IV.

We now turn to Ashburn's counterclaim. Ashburn sued Burch for breach of her covenant to use her "best efforts" in

---

[1] The Partnership Agreement recites that the note was given to purchase a one half interest in "a business" from Burch. This wording suggests the interest was in the original proprietorship, not the ensuing partnership.

procuring pool management contracts and retail locations for the partnership. He sought legal damages as his remedy.

Although the trial judge apparently concluded Burch had breached the covenant, he dismissed the counterclaim on the ground that Ashburn's proof of damages was speculative. In our opinion, the counterclaim should have been dismissed, but without adjudicating the questions of liability and damages.

This case calls for application of the rule that copartners cannot sue each other at law for matters arising out of the partnership until there is first an accounting in equity between the partners. *Course v. Prince*, 8 S. C. L. (1 Mill) 413 (1817); *Peeples v. Hornik*, 153 S. C. 321, 150 S. E. 802 (1929). The rule applies although there has been a dissolution of the partnership. *Peeples v. Hornik, supra.*

In this case, Burch claims the partnership was dissolved on May 30, 1985, when Ashburn defaulted on the note. Ashburn contends it is unclear when the parties discontinued the partnership.

Ashburn continued to operate the business during the 1985 season. He has never accounted for any partnership receipts either before or after May 30th. It appears Burch retained the assets of the partnership after the 1985 season. She operated the business with her brother-in-law, Joe Harris, during the 1986 season. Thereafter, she sold the business to Harris. Burch has never accounted to Ashburn for the partnership assets or his initial capital contribution.

In these circumstances, a settlement of accounts between the partners is required. Once an equitable accounting has been made, Ashburn may sue at law for any additional damages he claims by reason of Burch's alleged breach of the Partnership Agreement.

For the reasons stated, we affirm the judgment against Ashburn on the promissory note. We reverse judgment on the counterclaim and remand with directions to dismiss the counterclaim without prejudice.

Affirmed in part, reversed and remanded in part.

SANDERS, C. J., and GARDNER, J., concur.